## BUTLER *v.* HINES.

### Opinion delivered January 1, 1912.

1. ADVERSE POSSESSION—EVIDENCE.—While it is true that, where title has once been acquired by adverse possession, it can not be divested by the mere recognition of another's title, yet such recognition might be evidence to show that the holding of the claimant was not adverse, and it was error to charge the jury that such recognition could not be considered.   (Page 413.)

2. EVIDENCE—DECLARATIONS OF GRANTOR.—Statements, made by one who was in possession of a strip of land, which recognized another's interest therein would be competent against the former and his privies if made while he was holding the land; but like statements made by him after he had sold the lands are admissible only as contradictory of his statement in court.   (Page 413.)

3. ADVERSE POSSESSION—EFFECT OF MISTAKE AS TO BOUNDARY.—When a land owner, through mistake as to his boundary line, takes possession of land of an adjacent owner intending to claim only to the true boundary, such possession is not adverse, and, though continued for the statutory period, does not divest title; but when he takes possession of the land under the belief that he owns it, incloses it and holds it continuously for the statutory period under claim of ownership without any recognition of the possible right of another thereto on account of mistake in the boundary line, such possession is adverse, and, when continued for the statutory period, will divest the title of the former owner, who has been thus excluded from possession.   (Page 414.)

Appeal from Lee Circuit court; *Hance N. Hutton,* Judge; reversed.

*H. F. Roleson*, for appellant.

1. Where land belonging to coterminous proprietors is inclosed, the intention with which the possession was taken and held is controlling, because no title could be gained against the owner by mere possession. To bar an action for the recovery of land so held, the possession must be actual, open, notorious, hostile and exclusive, and accompanied by an intention to hold adversely to and in derogation of the rights of the true owner. The court should have given instruction 3 requested by appellant. 59 Ark. 626, 628; 80 Ark. 444; *Id.* 575.

2. The court in its charge to the jury made an erroneous application of the principle that one can not by a verbal declaration divest himself of a title already acquired. This is illustrated by instructions 3, 4, 5 and 6. The gist and substance of adverse possession is the intent with which the parties hold; yet, under these instructions, one who has remained in possession for over seven years might with impunity declare that he intended only to claim to the true line, yet such declaration would not be admissible as evidence against him to show the intention with which he had held. The signed statements made by Lynch, together with his verbal statements, were admissible for the purpose of showing that his holding was not adverse. 131 S. W. (Ark.) 456.

*S. H. Mann*, for appellee.

1. From the undisputed facts in the case it appears that some twenty-one years before this suit was brought Lynch and Brown, owning adjoining tracts of land, caused a dividing line to be run by the county surveyor, and it was agreed between them at the time that this survey should mark the boundaries of their land. Pursuant thereto, Lynch at once put a fence on this line, cleared the land, built houses thereon and occupied the property as his own until his sale to Hines, and the latter occupied it for a year after his purchase until Hughes took possession.

The line having been established by agreement between Lynch and Brown, and acquiesced in by the parties all these years, and valuable improvements made with reference thereto, the correctness of the line can not now be questioned. 75 Ark.

400; 36 S. W. (Ark.) 184. Such an agreement is not prohibited by the statute of frauds. 23 Ark. 704; 5 Cyc. 931.

Without reference to the correctness of the instructions, the judgment, being right upon the facts of the case, should be affirmed. 91 Ark. 97; 64 Ark. 236.

2. Instruction 3 requested by appellant was properly refused because it did not embrace the principle that possession of land may be adverse if it is inclosed and held under the belief and claim that it is the property of the holder in possession, even though the claim of title was the result of a mistake as to the boundaries. 59 Ark. 462. Moreover, the jury was fully instructed on the law of adverse possession, and the court was not required to repeat instructions. 93 Ark. 548; *Id.* 313.

3. The court correctly charged the jury that the alleged statement made by Lynch as to the character of his possession could only go to his credit. 16 Cyc. 1167. If it be conceded that the surveyed line was not correct, Lynch's title matured by adverse possession several years before this suit was brought. Any statements tending to a recognition to title in another, made by him thereafter, would not have the effect of divesting him of title previously acquired. 80 Ark. 444; *Id.* 575.

HART, J. This is an action of ejectment brought by Clarence Hines against Jack Butler and J. L. Hughes for the recovery of ten acres of land.

A. S. Lynch testified: "Ed Brown and I were adjoining land owners, each having 80 acres. In the year 1899 I had a survey run on the east line between me and Brown, and built a fence on the line. At the time it was agreed between Brown and me that this line was the boundary line between us. The strip of land in controversy fell within my line as then established. I built a house on this strip and cultivated it with the rest of my land until my conveyance to the plaintiff, Hines, in January, 1910. From the time of the survey in 1899 to the time of my conveyance to Hines in 1910, I claimed the strip of land in dispute as a part of my land. I never told Mr. J. E. Brown, Jr., that if there was any mistake as to the location of the fence, and if it was not on the correct line, it could be corrected, and the fence changed at any time. I never told Mr. Hughes that the line might not be correct, and that some of the land in my field might belong to Brown."

F. C. Danehower testified: "I was present when the survey was made in 1899. The fence between Brown and Lynch was put on the line as then surveyed, and Brown told Lynch that he was satisfied with the line. I think the line as surveyed was the correct line between Brown and Lynch."

The defendant introduced in evidence a written statement purporting to be signed by A. S. Lynch. Among other things, it contains the following:

"It was understood between J. E. Brown, Jr., and me that if there was a mistake in the location of the fence, and it was not on the exact line, that it could be corrected, and the fence changed at any time; and if I was over on the land, and owed him any rent after a settlement for clearing and improvement, and after the exact line was established, I would pay him such rent. There never was any intention on my part to take any of the land that actually belonged to Mr. Brown, nor to claim any land except the land described in my deed. At the time I sold my land to Mr. Clarence Hines I told him that this line where the fence was located might not be correct and was in dispute."

Lynch admitted signing the statement, but says he marked out all that part of it which is quoted above because it was not true.

From the testimony of the defendant, Hughes, it appears that this statement from Lynch was obtained after he had conveyed his land to the plaintiff, Hines. Hughes purchased from Brown after Hines had purchased from Lynch. Hughes testified that, after he purchased from Brown, Hines admitted to him that Lynch had told him that there had always been a dispute as to where the true boundary line was located, and that a survey would have to be made to ascertain it. Hines, however, denied making this statement to Hughes.

J. E. Brown, Jr., testified: "I inherited the land I sold to Hughes from my father. Lynch and I had several conversations about the line, and it was agreed between us that we could have a survey made at any time and ascertain the true line. Lynch never claimed to me that he owned any land except to the true line."

Gus R. Johnson, the county surveyor, testified that in the fall of 1910, at the instance of Hughes, he made a survey to

ascertain the boundary line between Hughes and Hines, and that the line as located by him included the land in dispute. After this survey was made, Hughes moved the fence so as to take into his inclosure the strip of land in dispute.

T. C. Conner stated that Lynch had a survey made in 1897 to establish the boundary between him and Brown. That the line as surveyed took in a strip of ground of about 10 acres which was then in Lynch's inclosure. He also stated that the fence was allowed to remain where it was and was never moved.

The jury returned a verdict for the plaintiff, and the defendants have appealed.

Counsel for the defendants assign as error the action of the court in giving the following instructions:

"4. The jury is instructed that, in arriving at a decision in this case, you are not to consider any statement made by A. S. Lynch touching his title to the land in dispute made after seven years of adverse possession had elapsed.

"5. You are instructed that statements made by Lynch out of court, if they contradict statements made by him in court, would not be evidence in the case, but would only go to his credibility as a witness."

In 1899 Lynch, the plaintiff's grantor, caused a survey to be made for the purpose of ascertaining the true boundary line between himself and Ed Brown, defendant's grantor, and constructed a fence on the line so established. It was the theory of the plaintiff in the court below that Lynch believed that he had built the fence on the true line, and that thereafter he claimed to the fence, regardless of the fact of whether it should be afterwards established that the fence was not on the true line. On the other hand, it was the theory of the defendants that Lynch never intended to claim except to the true line.

While it is true that, where title has once been acquired by adverse possession, it can not be divested by the mere recognition of another's title, such recognition might be evidence to show that the holding of the claimant was not adverse. In the present case, the character of the possession of Lynch was the all-important inquiry to which the attention of the jury was directed. Hence any act or declaration of Lynch at any time while he owned the land, tending to show that he recognized the claim of Brown to the land in dispute, was competent to

show the character of his possession. *Russell* v. *Webb,* 96 Ark. 190; *Hudson* v. *Stillwell,* 80 Ark. 575; *Shirey* v. *Whitlow* 80 Ark. 444. Therefore, the court erred in giving instruction No. 4.

Instruction No. 5 was also erroneous because it did not limit the statements made by Lynch to the time after he had conveyed the land to Hines. Such statements made by Lynch while he was holding the land himself were in the nature of declarations against his interest, and are therefore competent as independent evidence tending to show that he was not holding the land adversely; but like statements made after he has sold the lands are only admissible as statements contradictory to his statement in court, and only affect the credibility of his testimony.

The court correctly refused instruction No. 3 asked by defendants. That part of it which is as follows: "So if the jury find in this case that A. S. Lynch during the time that he occupied the land only intended to claim to the true boundary line, then his possession would not be adverse within the meaning of the law, and the statute of limitations would not begin to run until such time as he should assert to the owner of the opposite tract that he intended to claim to the extent of his possession, regardless of where the true line might be" is wrong for two reasons.

The law applicable to this class of cases is well stated by Mr. Justice RIDDICK in the case of *Goodwin* v. *Garibaldi,* 83 Ark. 74, as follows:

"When a land owner, through mistake as to his boundary line, takes possession of land of an adjacent owner intending to claim only to the true boundary, such possession is not adverse, and, though continued for the statutory period, does not divest title; but when he takes possession of the land under the belief that he owns it, incloses it and holds it continuously for the statutory period under claim of ownership without any recognition of the possible right of another thereto on account of mistake in the boundary line, such possession and holding is adverse, and, when continued for the statutory period, will divest the title of the former owner who has been thus excluded from possession." See, also, *O'Neal* v. *Ross,* 100 Ark. 555.

Hence it will be seen that the part of the instruction quoted is wrong. It ignores entirely the plaintiff's theory of the case, and in effect tells the jury that the statute of limitations did not begin to run until Lynch had notified Brown of his intention to claim adversely to him. This is not the law. If Lynch believed the fence built by him was on the true line, and took possession, improved and occupied the strip of land in dispute under that belief, and claimed to the fence as his own land, his possession was adverse, and it was not necessary for him to notify Brown that he was holding adversely to him.

Counsel for plaintiffs contend that judgment should be rendered in favor of the plaintiff on the undisputed evidence. While they do not cite the case, we assume that they rely upon *Payne* v. *McBride*, 96 Ark. 168. In that case we held that where there is doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the adjoining owners may, by parol, fix a line which will be binding upon them, although their possession under such agreement may not continue for the full statutory period.

A definite settlement of the boundary is a sufficient consideration for the agreement, and after their boundary is fixed by consent the parties hold up to it by virtue of the title deeds, and not by virtue of a parol transfer.

It can not be said in this case, however, that the evidence on this issue is undisputed. While it is true that Lynch testified that he and Brown agreed that the line located by the survey made in 1899 should be the boundary line between them, and Danehower said that he was present when the survey was made, and heard Brown say that he was satisfied with the line, yet their testimony is not undisputed. The testimony of Conner and Brown to the effect that Lynch subsequently spoke of the division line as being uncertain, and that he wanted to get it definitely located, tends to contradict their testimony.

For the error in giving instructions Nos. 4 and 5 at the request of the plaintiff, the judgment is reversed, and the cause remanded for a new trial.