

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–16–873

| | |
|---|---|
| IRVING T. SMITH, JR., AND MALINDA F. SMITH<br>APPELLANTS<br><br>V.<br><br>LONNIE DEAN BOATMAN AND FLORA JEAN BOATMAN<br>APPELLEES | Opinion Delivered: September 27, 2017<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. 16LCV-12-27]<br><br>HONORABLE JOHN N. FOGLEMAN, JUDGE<br><br>AFFIRMED |

**KENNETH S. HIXSON, Judge**

This case involves a boundary-line dispute in Craighead County. The appellants, Irving Smith and Malinda Smith, own property adjacent to and directly west of property owned by the appellees, Lonnie Boatman and Flora Boatman. When the Smiths purchased their property in 2011, there was an old wire fence traveling north to south, which encroached onto the Smiths' land as surveyed and was about ten feet west of the surveyed boundary line at the northern edge of their property and six feet west of the surveyed boundary line at the southern edge (sometimes referred to herein as the "disputed strip of land"). Irving Smith made this discovery after surveying his recently purchased property,

and in early 2012 he tore down the wire fence and built a new fence near the location of the surveyed boundary of the parties.[1]

Shortly after Mr. Smith tore down the old fence and built the new one, the Boatmans filed a petition to quiet title against the Smiths. In their petition, the Boatmans alleged that the old wire fence had served as the boundary line between their property and the property to the west for at least forty years. The Boatmans claimed ownership of the disputed strip of land by adverse possession and boundary by acquiescence. The Boatmans asked that the Smiths be ordered to remove the new fence and pay damages for removal of the Boatmans' pecan tree that was located on the disputed strip.

After a bench trial, the trial court entered an order quieting title to the disputed strip of land in the Boatmans. The trial court found that the old fence removed by Mr. Smith in 2012 had served as a dividing line between the properties for at least forty years. The trial court found that the Boatmans had acquired the disputed strip by both adverse possession and acquiescence. The trial court ordered the Smiths to move the new fence to the location of the old one and to pay $400 in damages for the destruction of the Boatmans' pecan tree.

The Smiths now appeal, raising two arguments for reversal. First, the Smiths argue that the trial court erred in reaching the conclusion that the Boatmans' predecessors in title had satisfied the hostility element of adverse possession. The Smiths also contend that the

---

[1]The new fence was not exactly on the record boundary line but was about a foot west of it.

trial court lacked sufficient evidence to make a finding of boundary by acquiescence with regard to the Smiths' predecessor in title.  We affirm.

We review quiet-title and boundary-line actions de novo, but we will not reverse findings of fact unless they are clearly erroneous.  *Lafferty v. Everett*, 2014 Ark. App. 332, 436 S.W.3d 479.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.  *Barton v. Brockinton*, 2017 Ark. App. 369, ___ S.W.3d ___. In reviewing a trial court's findings of fact, the appellate courts give due deference to the trial court's superior position and the weight to be accorded the testimony.  *Steele v. Blankenship*, 2010 Ark. App. 86, 377 S.W.3d 293.

Lonnie Boatman testified that he has lived on his property since he was five years old when his father bought the land in 1967.  Mr. Boatman's father sold him the property in 1988, and Mr. Boatman and his wife Flora have lived there ever since.  Mr. Boatman testified that the old wire fence was built around 1970 and remained there until torn down by Mr. Smith in 2012.  Mr. Boatman stated that they maintained the land up to the fence and grew a garden there every year.  According to Mr. Boatman, no one other than him had ever maintained his side of the fence since he bought his property in 1988.  The previous owner of the Smith property was Barton's Lumber Company, and Mr. Boatman stated that they never had any discussion about who owned the now-disputed strip of land.

Flora Boatman also testified that she had never seen any previous owner of the Smith property exercise any control of or claim the now-disputed strip of land.  Mrs. Boatman stated that they used the disputed strip of land for gardening and had a pecan tree on the

strip from 1981 until it was bulldozed by Mr. Smith in 2012. They used the pecan tree to sell pecans in the fall and made about $100 per year. In the winter months, Mrs. Boatman would clean the area around the fence and remove weeds.

Terry Wycoff is the Boatmans' neighbor to the north and has lived there for more than twenty years. When Mr. Wycoff first moved there, Barton's Lumber Company was in operation on the west side of the old fence which is now the Smith property. According to Mr. Wycoff, the Boatmans used the disputed strip of land and bush hogged to the fence about twice a year. The Boatmans' garden went up to the fence. Mr. Wycoff stated that Barton's Lumber used its side of the fence to pile gravel and rocks. Mr. Wycoff said that the Boatmans maintained their side of the fence and that Barton's maintained its side, and that he never knew of anyone claiming land east of the fence except the Boatmans.

Jim Taylor is the Boatmans' neighbor to the south and has lived there since 1982. Mr. Taylor testified that the Boatmans always controlled the disputed strip of land and had a garden there every year. When Mr. Smith was tearing down the fence in 2012, Mr. Taylor told Mr. Smith that he thought the fence was on Mr. Boatman's property, but Mr. Smith told Mr. Taylor to mind his own business.

Appellant Irving Smith testified that after he bought his property in 2011 he noticed a survey marker to the east of the old fence in the Boatmans' garden in what is now the disputed strip of land. Mr. Smith then conducted his own survey and discovered that the Boatmans' garden extended past the surveyed property line. Mr. Smith then tore down the old fence and built the new fence near his surveyed boundary line, and he stated that while he was building the new fence Mr. Boatman never tried to stop him. Smith further testified

that Mr. Boatman told him he might as well take out the pecan tree too. Mr. Smith testified that although Mr. Boatman did tell him that his father had put up the old fence, Mr. Boatman never claimed to own the land up to the fence until filing the lawsuit.

On rebuttal, Mr. Boatman testified that he never gave Mr. Smith permission to tear down his fence or his pecan tree. In fact, Mr. Boatman stated that he called the local police department when he saw the excavator tearing down the fence. Based on the foregoing, the trial court found that the Boatmans owned the disputed strip of land by adverse possession and by acquiescence.

The Smiths' first argument on appeal is that the trial court erred in determining that the Boatmans had acquired the disputed strip of land by adverse possession. In order to prove ownership of land by adverse possession the party claiming possession must show continuous possession of the property for seven years. *Robertson v. Lees*, 87 Ark. App. 172, 189 S.W.3d 463 (2004). The claimant must also prove that possession was actual, open, continuous, hostile, exclusive, and accompanied by an intent to hold against the true owner. *Washington v. Washington*, 2013 Ark. App. 54, 425 S.W.3d 858. The Smiths specifically contend that the actions of the Boatmans' predecessor in title failed to satisfy the requirements of being hostile and accompanied with an intent to hold against the true owner. The Smiths suggest that the actions of the Boatmans' predecessor are best described as having constructed a fence that mistakenly strayed from the legal property line and enclosed a portion of the neighboring land. Characterizing this as an unintended mistake as to the location of the true boundary, the Smiths posit that it was insufficient to satisfy the

hostility element or the intent to hold against the true owner as required of an adverse possessor.

We hold that the trial court did not clearly err in finding that the Boatmans proved each of the elements of adverse possession with regard to the disputed strip of land. While the Smiths assert that the old fence was constructed to the west of the record boundary line by mistake, there was no evidence presented to support that claim. The testimony showed that Mr. Boatman's father erected the fence around 1970, but there was no testimony that his father intended for the fence to run along the record boundary line. And even had there been testimony that Mr. Boatman's father's placement of the fence was a mistake, we have held that if the intention is to hold property adversely, the statutory period for adverse possession runs regardless of any mistake as to boundary or title. *Dickson v. Young*, 79 Ark. App. 241, 85 S.W.3d 924 (2002). When a landowner takes possession of land under the belief that he owns it, encloses it, and holds it continuously for the statutory period under claim of ownership, without recognition of the possible right of another on account of mistake, such possession is adverse and hostile to the true owner. *Id.* (citing *Davis v. Wright*, 220 Ark. 743, 249 S.W.2d 979 (1952); *Butler v. Hines*, 101 Ark. 409, 142 S.W. 509 (1912)).

In this case the Boatmans presented four witnesses who testified that the Boatmans had claimed the disputed strip of land inside their fence, maintained it, and exercised control over it for far longer than the required seven-year period. The Boatmans' occupation of the property included bush hogging, harvesting pecans, and maintaining a garden up to the fence line. There was no evidence that the Smiths' predecessors in title had ever claimed ownership or tried to exercise control of the disputed strip of land between the time the

fence was constructed in 1970 and the time the Smiths bought the property in 2011. It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Sutton v. Gardner*, 2011 Ark. App. 737, 387 S.W.3d 185. We conclude that the conduct of the Boatmans satisfied the hostility element of adverse possession and demonstrated an intent to hold against the true owner, and therefore we affirm the trial court's finding that the Boatmans acquired title to the disputed property by adverse possession.

The Smiths also argue that the trial court erred in finding that the Boatmans had acquired title to the disputed property by acquiescence. However, because we affirm the trial court's finding of adverse possession, this issue need not be discussed.

Affirmed.

ABRAMSON and VAUGHT, JJ., agree.

*Woodruff Law Firm, P.A.*, by: *Jennifer Woodruff Douglas*, for appellants.

*Tiner, Cobb & Byars*, by: *Jarrett Matthew Cobb*, for appellees.