Cite as 2020 Ark. App. 40

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-372

|  |  |  |
|---|---|---|
| ADRIANNE O'NEAL | | **Opinion Delivered:** January 22, 2020 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60CV-14-2648] |
| V. | | |
| ETHEL LOVE | | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| | APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

The appellant, Adrianne O'Neal, appeals a decree of the Pulaski County Circuit Court quieting title in real property to appellee, Ethel Love, and denying her unlawful-detainer claims. We affirm.

### I. *Procedural History*

This case is before us for the fourth time,[1] and a detailed recitation of the facts is set out in our previous opinions. Therefore, we include only a brief summary of the facts for the purposes of this opinion.

Herbert Love is Adrianne's father and Ethel's brother. He originally owned the property in dispute individually. In 1995, he granted an interest in the property by warranty

---

[1]*O'Neal v. Love*, 2015 Ark. App. 689, 476 S.W.3d 846 (*O'Neal I*); *O'Neal v. Love*, 2017 Ark. App. 336, 523 S.W.3d 381 (*O'Neal II*); *Love v. O'Neal*, 2018 Ark. App. 543, 564 S.W.3d 546 (*O'Neal III*).

deed to his wife, Gloria.[2] By virtue of this deed, Herbert and Gloria owned the property as tenants by the entirety with each possessing a right of survivorship. This is true even though the 1995 warranty deed was not recorded until after this lawsuit was initiated in 2014. *See O'Neal v. Love*, 2015 Ark. App. 689, 476 S.W.3d 846 (*O'Neal I*).

In 1999, Herbert quitclaimed his interest in the property to Ethel. Ethel recorded the deed and lived on the property with Herbert. When Herbert quitclaimed his interest to Ethel, he and Gloria were still married but estranged. Because the deed she received from Herbert was a quitclaim deed, Ethel acquired only Herbert's interest in the property, while Gloria still retained the interest she received from the 1995 deed.

Herbert and Ethel both lived on the property until Herbert's death in 2004. Upon Herbert's death, Ethel's interest in the property was extinguished, and Gloria became the owner of the property in fee simple by her right of survivorship. *See O'Neal v. Love*, 2017 Ark. App. 336, 523 S.W.3d 381 (*O'Neal II*).

After Herbert's death, Ethel continued to live on the property. She also continued to pay taxes and insurance on the property and made some improvements thereto, just as she had since receiving the quitclaim deed in 1999.

Gloria, on the other hand, took no action regarding the property for approximately ten years after Herbert's death. She never requested that the property be assessed in her name after Herbert's death; she never paid the property taxes, insurance, or utilities on the property; she never performed any maintenance or repairs; and she never asked Ethel to

---

[2]Gloria is Adrianne's mother.

vacate the property. In fact, Gloria did not take any action with respect to the property until 2014 when she executed a quitclaim deed to Adrianne, conveying her interest in the property to her daughter.

Shortly after the property was deeded to her, Adrianne served Ethel with a notice to vacate and intent to issue a writ of possession. When Ethel refused to vacate the property, Adrianne filed an action for unlawful detainer. Ethel denied and defended the action, claiming to be the title owner to the property on the theories of adverse possession and of being a good-faith purchaser. Ethel additionally filed a counterclaim seeking to quiet title alleging (1) fee-simple ownership by exclusive possession under a claim of right and payment of taxes since 1999; (2) adverse possession since 1999; and (3) that Gloria had abandoned any homestead rights or dower interest in the property by failing to assert them within the applicable limitations period.[3] Adrianne responded by denying the counterclaim.

The parties presented their causes of action to the court in one evidentiary hearing. This one evidentiary hearing has spawned numerous appeals. In the previous appeals, we issued opinions that addressed the parties' conflicting interests in the disputed property. In the last opinion, *O'Neal III*, we remanded for a determination by the trial court as to whether Ethel's possession of the property upon Herbert's death in 2004 was adverse or permissive. On remand, the trial court quieted title in Ethel by adverse possession. Adrianne

---

[3]Ethel subsequently amended her counterclaim to include a request for damages to recover for improvements and taxes paid on the property in the event the court did not quiet title in her name. Adrianne again denied the allegations in the amended counterclaim.

appeals, claiming that the trial court erred in concluding that Ethel adversely possessed the property in question and denying her claim for unlawful detainer.

## II. *Standard of Review*

In adverse-possession and quiet-title actions, we conduct a *de novo* review on the record. *Morrison v. Carruth*, 2015 Ark. App. 224, at 2, 459 S.W.3d 317, 319. To prove the common-law elements of adverse possession, a claimant must show that he or she has been in possession of the property continuously for more than seven years and that the claimant's possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Id*. It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his or her own property and would not exercise over the land of another. *Id.* Whether possession is adverse to the true owner is a question of fact. *Id.* When a landowner takes possession of land under the belief that he or she owns it, encloses it, and holds it continuously for the statutory period under claim of ownership without recognition of the possible right of another on account of mistake, such possession is adverse and hostile to the true owner. *Smith v. Boatman*, 2017 Ark. App. 488, at 6, 529 S.W.3d 254, 258; *Dickson v. Young*, 79 Ark. App. 241, 85 S.W.3d 924 (2002) (citing *Davis v. Wright*, 220 Ark. 743, 249 S.W.2d 979 (1952); *Butler v. Hines*, 101 Ark. 409, 142 S.W. 509 (1912)). Additionally, in 1995, the General Assembly added as a requirement for proof of adverse possession that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years. Ark. Code Ann. § 18-11-106 (Repl. 2015).

III. *Analysis*

In this current appeal, Adrianne argues that the trial court erred in finding that Ethel adversely possessed the property upon Herbert's death. She raises three arguments in support of her claim: (1) the trial court's finding that Ethel's initial entry onto the property was hostile and not permissive was in error; (2) the trial court's finding that Ethel's possession of the property after the death of Herbert was hostile and not permissive was in error; and (3) the trial court's finding that Gloria had notice of Ethel's intent to adversely possess the property was in error. We disagree.

In her first argument on appeal, Adrianne challenges the trial court's "implicit" finding that Ethel's initial entry onto the property was hostile and not permissive. We resolved this issue in *O'Neal III* and noted that the issue to be resolved by the trial court on remand was whether Ethel's continued possession of the property after Herbert's death became adverse as to Gloria. *O'Neal III*, 2018 Ark. App. 543, at 7, 564 S.W.3d at 550. We find no merit in her attempt to relitigate this issue in the current appeal.

For her second argument on appeal, Adrianne claims that she is entitled to the familial presumption of permission accorded in adverse-possession cases. Under that presumption, the use of land by family members is presumed to be permissive; therefore, in cases involving family, stronger evidence of adverse possession is required.

Arkansas does recognize the familial presumption of permission in adverse-possession cases. *Washington v. Washington*, 2013 Ark. App. 54, 425 S.W.3d 858. The familial presumption of permission ostensibly rests on the premise that family members exhibit a closer relationship and a stronger bond than that which exists between strangers; therefore,

permissive use is more likely. *See Robertson v. Lees*, 87 Ark. App. 172, 189 S.W.3d 463 (2004). The familial presumption necessarily depends on degrees of consanguinity and has been applied in those cases in which there are strong familial bonds. *See Bellamy v. Shryock*, 211 Ark. 116, 122, 199 S.W.2d 580, 583 (1947) ("As between parties sustaining parental and filial relations, the possession of the land of the one by the other is presumptively permissive or amicable, and, to make such a possession adverse, there must be some open assertion of hostile title, other than mere possession, and knowledge thereof brought home to the owner of the land.").

While we acknowledge this presumption exists, we conclude the presumption is inapplicable under the facts of this case. Here, as between Ethel and Gloria (Adrianne's predecessor in title and owner of the property at the time in question), there are no sustaining parental or filial relations. The two women are sisters-in-law and related only by marriage. While Gloria was married to Ethel's brother, Herbert, at the time of his death, Gloria and Herbert had been estranged for years. It is further clear from the record that Gloria had virtually no contact with Ethel in the fifteen years she lived on the property, and that Ethel was not even certain that Gloria and Herbert remained married because the two had divorced once before. In fact, both Gloria and Adrianne admitted that they basically had no contact with Ethel after Herbert's death—such contact being limited to the funeral in 2004 and a hospital visit in 2013. Thus, the parties were more akin to strangers than family, and the presumption does not apply.

Gloria next argues that the trial court erred in finding that she had notice of Ethel's intent to adversely possess the property. We disagree. The evidence presented at the hearing

6

was sufficient to support the trial court's conclusion in this regard. The evidence showed that Ethel remained on the property after Herbert's death and held herself out to the world as the owner of the property: She lived on the property for over ten years; she maintained and improved the property; and she paid taxes and insurance on the property. Moreover, because the 1995 warranty deed was not recorded until 2014, any title search conducted prior to that date would suggest to the world—and to Gloria and Adrianne—that Ethel had title to the property in fee simple or, at the very least, that she was claiming some ownership interest in the property. It is undisputed that Gloria and Adrianne knew Ethel was living on the property. They had even visited the property and saw the improvements Ethel made to the property. Neither Gloria nor Adrianne had paid any taxes on the property; yet a simple search of the property-tax records would show that Ethel had made those payments. This is sufficient to support the trial court's finding of notice.

As stated above, whether possession is adverse to the true owner is a question of fact. *Morrison*, *supra*. On these facts and our de novo review of the record, we cannot conclude that the trial court's determination that Ethel had adversely possessed the property was clearly erroneous or that its denial of Adrianne's unlawful-detainer action was not appropriate. We therefore affirm the decision of the trial court.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Sanford Law Firm, PLLC*, by: *Josh Sanford*, for appellant.

*Bennie O'Neil*, for appellee.