Cite as 2022 Ark. App. 78

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-20-733

| | |
|---|---|
| | Opinion Delivered February 16, 2022 |
| LARRY PHIFER | |
| APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73CV-13-156] |
| V. | |
| | HONORABLE CRAIG HANNAH, JUDGE |
| JANET OUELLETTE, PERSONAL REPRESENTATIVE OF THE ESTATE OF RUTH COWIN; RICHARD COWIN; MARGOT COWIN; ANADARKO E&P COMPANY, L.P., A DELAWARE PARTNERSHIP; ANADARKO LAND CORP., A NEBRASKA CORPORATION; CHESAPEAKE EXPLORATION, LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY; SOUTHWESTERN ENERGY COMPANY, A DELAWARE CORPORATION; AND BHP BILLITON PETROLEUM (FAYETTEVILLE), LLC, A DELAWARE LIMITED LIABILITY COMPANY | |
| APPELLEES | AFFIRMED AS MODIFIED |

### MIKE MURPHY, Judge

This case is a dispute over percentage ownership in minerals interests in a 190-acre tract of land in White County, Arkansas. The circuit court quieted title in the minerals with a 25 percent interest to the appellant, Larry Phifer, and 75 percent interest to Margot and Richard Cowin, the appellees. Phifer appeals, contending that the circuit court erred in its calculation. He argues that the mineral interests are owned 50/50. He also argues that the

court impermissibly entered one of the orders in the case nunc pro tunc. We affirm as modified.

In April 2013, Phifer filed suit against several parties seeking to determine the respective ownership interests of mineral rights associated with a tract of land containing approximately 190 acres. Phifer contended he owned a 50 percent mineral interest, and the appellees, Margot and Richard Cowin, asserted they owned a 75 percent mineral interest. Phifer later amended the complaint to add an action for quiet title and a claim against his predecessor in title, Ruth Cowin, for breach of the covenant of warranty in the event the action was resolved against him. Ruth is deceased, and Janet Oullette was the personal representative of Ruth's estate. The Cowins counterclaimed for declaratory judgment. Several other defendants interested in the litigation by virtue of leasing mineral rights also filed counterclaims and cross-claims in the case seeking relief based on the ultimate outcome of the quiet-title action between Phifer and the Cowins.

After a bench trial, the circuit court quieted titled and found that the Cowins owned 75 percent of the mineral interests and Phifer owned 25 percent. Phifer appealed, but in appealing realized that there were finality issues that required addressing—several claims and cross-claims were still outstanding. We dismissed his appeal on his motion. On December 12, 2018, the circuit court entered an order dismissing the claims of the separate defendants. Phifer again appealed. After filing that notice of appeal, however, Phifer noticed that there was still an outstanding, unresolved claim against a party not a part of the appeal (specifically, his claim against Ruth Cowin's estate) and moved to dismiss the appeal in order to dispose

2

of that remaining issue. We again granted the dismissal with the mandate issuing August 21, 2019.

On September 8, 2020, the appellees moved for summary judgment asking for dismissal of the claim against the estate. In an order drafted by the appellees, the circuit court granted summary judgment dismissing the claim against the estate nunc pro tunc to the December 12, 2018 order.

Phifer appealed for a third time. On appeal, he argues that the circuit court erred in its quiet-title analysis, specifically when it misconstrued an ambiguous deed, causing the court to miscalculate the mineral ownership interests. He additionally argues that the circuit court erred in issuing the summary judgment dismissing the claim against the estate nunc pro tunc to the earlier date. Also before us is a motion to dismiss the appeal filed by the appellees that was passed to the panel. We will first address the motion to dismiss.

I. *Motion to Dismiss*

The appellees' motion to dismiss was passed to the panel for consideration with the submission of the case. In that motion, they assert that because Phifer has filed notices of appeal in this case twice and dismissed the same twice, he is barred from bringing this appeal due to the requirement that an appellant waive pending but unresolved claims in the notice of appeal.

Arkansas Rule of Appellate Procedure–Civil 3(e)(vi) provides that a notice of appeal must contain a statement that the appealing party abandons any pending but unresolved claims. Such an abandonment operates as a dismissal with prejudice effective on the date

3

that the otherwise final order or judgment appealed from was entered. The Cowins argue that when Phifer abandoned his claims in his notices of appeal, he necessarily also abandoned his claim against Oullette, rendering it unnecessary to go back to circuit court to have her dismissed. They contend that as a result, Phifer's appeal is now untimely. Their argument, however, is moot. After the second dismissal, the Cowins moved for summary judgment on the outstanding claim, and the court entered an order granting the same. Phifer's appeal timely followed.

## II. *Nunc pro Tunc*

The Cowins additionally attempt to use the nunc pro tunc language from the summary-judgment order as another way to attack the jurisdiction of this court over this appeal, the appellant argues that the circuit court erred in granting the summary-judgment order nunc pro tunc.

Circuit courts have the authority to correct clerical mistakes in an order at any time with a nunc pro tunc order; it is used to "make the record speak now what was actually done then." Ark. R. Civ. P. 60; *Francis v. Protective Life Ins. Co.*, 371 Ark. 285, 293, 265 S.W.3d 117, 123 (2007). A circuit court is permitted to enter a nunc pro tunc order when the record is being made to reflect that which occurred but was not recorded due to a misprision of the clerk. *Rossi v. Rossi*, 319 Ark. 373, 892 S.W.2d 246 (1995). This court has defined a true clerical error, one that may be corrected by nunc pro tunc order, as "essentially one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else)." *Luckes v. Luckes*, 262 Ark. 770, 772, 561 S.W.2d

4

300, 302 (1978).

The order here, however, was entered after an exhaustive motion for summary judgment was made by the appellees. That motion contained extensive argument that was simply not before the court when it entered its December 12, 2018 order. Thus, it was erroneous for the court to enter summary judgment nunc pro tunc.

### III. *Quiet Title*

Quiet-title actions have traditionally been reviewed de novo as equity actions. *SEECO, Inc. v. Holden*, 2015 Ark. App. 555, at 4, 473 S.W.3d 36, 38. Our standard of review on appeal from a bench trial is not whether there was substantial evidence to support the finding of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Mauldin v. Snowden*, 2011 Ark. App. 630, at 2, 386 S.W.3d 560, 562. The basic rule in the construction of deeds, as with other contracts, is to ascertain and give effect to the real intention of the parties, particularly of the grantor, as expressed by the language of the deed, when not contrary to settled principles of law and rules of property. *Duvall v. Carr-Pool*, 2016 Ark. App. 611, at 9–10, 509 S.W.3d 661, 667.

On appeal, Phifer argues that the court's 75/25 division of mineral rights was error, and the flaw in its reasoning occurred when it misinterpreted one of the deeds in the chain of title. A very brief recitation of the chain of title prior to the deed in question warrants discussion.

In 1983, the appellees owned as tenants by the entirety an undivided one-half interest in 230 acres of land in White County. Of that 230 acres, they owned an undivided one-half

5

of the mineral rights to 190 acres. The owners of the other undivided one-half of the land and mineral rights were Richard's parents, Wilburn and Ruth Cowin. The mineral rights to the other forty acres undisputedly belong to another party and are not at issue in this appeal.

In 1983, the following two deeds were executed in succession: the first deed (Exhibit G) granted an undivided one-half of the mineral rights to Richard and Margot;[1] the second (Exhibit H) deeded all of the land and all of the mineral rights, except for the one-half of the mineral rights owned exclusively by Richard and Margot, to a third party named Ray Carter.

On appeal, Phifer expresses no issue with the court's interpretation of Exhibit G; he instead argues that the language from Exhibit H is ambiguous, and the circuit court misinterpreted it, resulting in an erroneous division of mineral interests.

Exhibit H reads as follows: "That we, Wilburn Wesley Cowin and Ruth A Cowin, husband and wife, and Richard W. Cowin and Margot P. Cowin, husband and wife, GRANTORS," grant to Ray Carter the 190 acres in White County "LESS AND EXCEPT one-half of all oil, gas and other minerals in, on and under the land under examination previously conveyed to Richard W. Cowin and Margot P. Cowin."

The construction of a deed is a matter of law, which we review de novo. *Maxey v.*

---

[1]The circuit court found that Exhibit G was "so vague as to make it impossible to determine the extent of the mineral rights being conveyed by each grantor" and concluded it was of no effect. We disagree. The deed conveyed from the four grantors to Richard and Margot "one-half of all oil, gas, coal and other minerals of every kind, character and description whatsoever, whether herein specifically referred to you by reference under the general classification of minerals in, under and upon" the 190 acres. That means that Richard and Margot received half, and the two couples together owned the other half.

*Kossover*, 2009 Ark. App. 611, at 1. When interpreting a deed, we give primary consideration to the intent of the grantor. *Harrison v. Loyd*, 87 Ark. App. 356, 365, 192 S.W.3d 257, 263 (2004). We examine the deed from its four corners for the purpose of ascertaining that intent from the language employed. *Id.* Further, we gather the intention of the parties, not from some particular clause, but from the whole context of the agreement. *Gibson v. Pickett*, 256 Ark. 1035, 1040, 512 S.W.2d 532, 535–36 (1974). We will resort to the rules of construction only when the language of the deed is ambiguous, uncertain, or doubtful. *Barger v. Ferrucci*, 2011 Ark. App. 105, at 3–4.

The clause from Exhibit H, standing alone, could be considered ambiguous due to the phrase "previously conveyed" because we do not know what was "previously conveyed" from the four corners of the deed alone. When a clause in a deed is ambiguous, a court is to interpret the language in the light of attendant circumstances, putting itself in the place of the parties, and particularly the grantor. *Gibson v. Pickett*, 256 Ark. 1035, 1041, 512 S.W.2d 532, 536 (1974). One acceptable way to determine the attendant circumstances is to look at the chain of title. *Id.*

Examining this deed within the chain of title, then, it is clear that the phrase "LESS AND EXCEPT one-half of all oil, gas and other minerals in, on and under the land under examination previously conveyed to Richard W. Cowin and Margot P. Cowin" means the one-half mineral interest conveyed to Richard and Margot in the immediately preceding deed, which was executed on the same day and immediately before the Exhibit H deed.

Accordingly, at the conclusion of the transactions in 1983, Ray Carter owned all 190

7

acres of the land and half the mineral rights associated with it, and the appellees owned the other half. To correctly determine Phifer's interest in the land, however, we have to examine three more transactions.

In 1984, Carter and his wife quitclaimed all their interests in the land at issue back to Wilburn and Ruth Cowin, as husband and wife, and Richard and Margot, as husband and wife. Thus, the two couples owned the land and half of the mineral rights, and the appellees owned the other half of the mineral rights.

In 1988, Richard and Margot deeded the land back to Wilburn and Ruth, reserving their mineral rights. This put the land in Wilburn and Ruth's possession but left the mineral rights untouched. So, in 2008, when Ruth, as the surviving widow of Wilburn Cowin deeded without reservation the property to Phifer, the final interests stood as follows: Phifer owned the land, Richard and Margot owned half the mineral rights, and Phifer split the other half of the mineral rights with Richard and Margot.

Put another way, Phifer owns an undivided half of an undivided half of the mineral rights. And although we took a different route, we arrived at the same conclusion as the circuit court: 75 percent of the mineral interests to the appellees and 25 percent to Phifer. We can affirm a circuit court when we reach the same result, even if we state a different reason. *See, e.g., Sluder v. Steak & Ale of Little Rock, Inc.*, 368 Ark. 293, 245 S.W.3d 115 (2006).

We affirm the quiet title determination. Regarding the summary-judgment order issued by the circuit court nunc pro tunc, we affirm it as modified to reflect that it was effective as of the date it was entered.

Affirmed as modified.

G RUBER and V AUGHT, JJ., agree.

*Simpson & Simpson*, by: *James A. Simpson, Jr.*, for appellant.

*George Carder* and *Robert S. Tschiemer*, for separate appellees Richard Cowin and Margot Cowin.