Cite as 2024 Ark. App. 604

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-23-247

| | |
|---|---|
| LUCINDA HAMMAT HARTS; SUZANNE C. PETERSON; ERIC P. PETERSON; AND CHRISTOPHER T. HOUSER<br><br>APPELLANTS | Opinion Delivered December 11, 2024<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. 12CV-20-189] |
| V. | HONORABLE HOLLY MEYER, JUDGE |
| CAROLINE H. DAMSKY AS TRUSTEE OF THE CAROLINE DAMSKY LIVING TRUST DATED 6/03/99; JAMES M. BERMAN; ACC LEGACY, LLC, BY ELIZABETH GALLIC, MANAGING MEMBER; AND SHALE ROYALTY, LLC<br>APPELLEES | AFFIRMED |

## BART F. VIRDEN, Judge

The Cleburne County Circuit Court entered an order quieting title to a 30.6% interest in mineral rights in appellees Caroline H. Damsky as trustee of the Caroline Damsky Living Trust dated 6/03/99; James M. Berman; and ACC Legacy, LLC (referred to collectively as "appellees"). The trial court also quieted title to an overriding royalty interest in the minerals in appellee Shale Royalty, LLC.[1] Appellants Lucinda Hammat Harts;

---

[1]The interests of entities including Caer Energy, LLC, f/k/a Riverbend Oil & Gas VIII, LLC; Flywheel Energy Production, LLC; Merit Energy Company, LLC; and MMGJ

Suzanne and Eric Peterson; and Christopher T. Houser argue that the trial court erred in finding that appellees met the requirements of Ark. Code Ann. § 28-40-104(b) (Repl. 2012), and were therefore entitled to use a decedent's unprobated will as evidence of the devise of mineral interests to them. Appellants also assert that quieting title in appellees contravenes the plain text of the statute. We affirm.

I.   *Background*

When one of the lessees of the mineral interests at issue here suspended payment of royalties to appellees in 2019 because of uncertainty with respect to ownership of those interests, appellees filed a quiet-title action in December 2020 and sought a declaratory judgment with regard to the royalties held in suspense.[2] Appellees claimed title to the minerals through Eleanor Cosden, whose will had been probated in New York where she died. The complaint alleged that Cosden did not have any children but did have several siblings. The complaint further alleged that Cosden had left specific bequests to the living issue of her three deceased siblings and had left the residue of her estate to her two surviving siblings, Carolyn N. Sleeper and Helen N. Carson. The complaint alleged that the assets of Cosden's estate had been distributed to Sleeper and Carson but that the mineral interests had not been transferred pursuant to a probate court order in Arkansas. Appellees claimed title to the mineral interests as descendants of Sleeper and Carson, and they sued the other

_____

Arkansas Upstream, LLC, are derived from appellees' interests because they are successor owners of oil and gas leases executed by appellees.
    [2]The declaratory-judgment action was ultimately dismissed without objection.

2

Cosden descendants/heirs along with various owners of oil and gas leases executed by or on behalf of appellees.[3] Appellees alleged in the complaint that Cosden's unrevoked will could be admitted as evidence to prove the transfer of the mineral interests.

Shale Royalty, a named defendant, filed a cross-claim against the other defendants alleging that it owned an overriding royalty interest in the minerals by virtue of an assignment by Stephens Production Company that had been carved out of the oil and gas leases of the lessee defendants referred to above. Shale Royalty asserted that its interest derived from the appellees' interest.

At a bench trial, appellees presented the testimony of an expert witness, William C. Warren, Jr., who testified that he is an attorney and "landman." He testified about the chain of title, which was summarized by a report that was introduced into evidence. Warren testified about documents that he relied on in preparing the report. When Cosden died in 1963, she owned a 30.6% interest in minerals in Cleburne County and other counties in Arkansas. In her will, after leaving specific bequests to the living descendants of her three deceased siblings, Cosden left the residue of her estate to Sleeper and Carson in equal shares. Referring to a cross-conveyance and stipulation of interest dated April 15, 1974, Warren testified that the document referred to minerals in Pope County but reflected that both Sleeper and Carson claimed equal interests in those minerals, which he said was consistent with their claiming ownership of the mineral interests at issue here as early as 1974.

---

[3]Appellees stipulated that they had named the "lessee defendants" and Shale Royalty for notice purposes only due to their economic interests in the lawsuit.

Warren testified that Sleeper died testate in Arizona in 1982 and left her 15.3% interest in the minerals to her only child, Frances S. Moley. Moley then put her share of minerals in a trust, which in 2002, conveyed the minerals in equal shares to Caroline Hebard Damsky (7.65%) and James Brookmire Hebard (7.65%). Damsky and Hebard separately leased their mineral interests to Stephens Production Company and others in October 2005. In 2010, Hebard conveyed his interest to his wife, Joan Berman Hebard. When she died, her interest in the minerals was probated into a trust, which conveyed the mineral interest to James Maxwell Berman in 2014. Also, in 2010, Caroline Damsky conveyed her interest to herself as trustee of the Caroline H. Damsky Living Trust.

Warren further testified that Carson died around 1977 and that her interest in the minerals was conveyed in equal shares to her two daughters, Helen Elizabeth Lockwood (7.65%) and Josephine Ann Rider (7.65%). All of Lockwood's heirs conveyed their interests to Rider, which gave Rider a 15.3% interest in the minerals. Rider died in 2002, and her interest was devised to Ross Peter Anderson II. Anderson leased his mineral interests to Stephens Production Company and others in October 2005. Anderson later conveyed his interest to ACC Legacy, LLC.

Warren further testified that he saw no evidence that any of Cosden's other heirs, aside from appellees, had claimed an interest in the minerals in Cleburne County. Warren conceded that there was some reference in his report to two ancillary proceedings in

4

Arkansas having to do with Cosden's will;[4] however, Warren denied that he had looked at any probate records from Pope County in preparing his report on the chain of title. He explained that he thought the 1982 Pope County proceeding was still pending, so it was his practice not to examine such records because they "weren't finished." Neither party introduced the records from Pope County, but the file was submitted at the court's request after the trial had concluded.[5]

Appellees also presented the testimony of James Cary, a Cosden descendant and "mineral manager" for appellees. Cary testified that Cosden had received her share of the mineral interests as part of a family settlement agreement following the death of his great-grandfather. He said that Cosden's 30.6% interest included minerals in Cleburne, Pope, Van Buren, White, Conway, and Faulkner Counties. Cary stated that he had power of attorney for appellees and then testified about the leases, probates, transfers, and devises involving the minerals. He also testified about which wells were producing in various sections, and a spreadsheet was introduced showing production and royalties on a section-by-section basis. He stated that, although all of the appellees were "in pay" at the time with

---

[4]Warren's report states, "An Ancillary Probate Case for Eleanor N. Cosden has been filed in Pope County (P-82-50) and in Cleburne County (PR-2011-169-4)."

[5]The Pope County file for case No. P-82-50 showed that Warren himself had petitioned to admit Cosden's will to probate on behalf of Energy Leasing Services, Inc., and that an order had been entered admitting the will to probate without administration in 1982.

the lessee defendants, he had advised appellee Damsky to seek to probate Cosden's will in 2011 in Cleburne County in order to clear up title to the mineral interest.[6]

Following the bench trial, the trial court quieted title to the minerals in appellees and found that they had met the requirements of Ark. Code Ann. § 28-40-104(b), which provides the following:

> (b) Except as provided in § 28-41-101, to be effective to prove the transfer of any property or to nominate an executor, a will must be declared to be valid by an order of probate by the circuit court, except that a duly executed and unrevoked will which has not been probated may be admitted as evidence of a devise if:
>
> (1) No proceeding in circuit court concerning the succession or administration of the estate has occurred; and
>
> (2) Either the devisee or his or her successors and assigns possessed the property devised in accordance with the provisions of the will, or the property devised was not possessed or claimed by anyone by virtue of the decedent's title during the time period for testacy proceedings.

The trial court found that Cosden had owned the minerals at issue and that she had devised the minerals to appellees' predecessors in interest through her will. The trial court found that Cosden's will was admissible as evidence of that devise. The trial court first found that "[t]he probate cases in Cleburne County and Pope County did not address succession nor administer the Will as contemplated by Ark. Code Ann. § 28-40-104(b)(1)." Next, the trial

---

[6]The record reflects that in case No. 12PR-2011-169-4, a decree was entered on December 6, 2011, admitting Cosden's will to probate without administration; however, an order was entered November 30, 2020, vacating that earlier order because it was time-barred given that the petition to admit the will to probate was filed more than five years after Cosden's death in 1963. Likewise, the order denied a February 2020 petition to probate Cosden's will.

6

court found that no one had possessed or claimed the minerals during the time period for testacy proceedings; therefore, the requirements of Ark. Code Ann. § 28-40-104(b)(2) were also met. The trial court further noted that once the time period for testacy proceedings had lapsed in May 1968—five years after Cosden's death—appellees or their predecessors in title had possessed the minerals by transferring and leasing them and by deriving proceeds from production of some portion of the minerals in Cleburne County and that there had been no claim by appellants or any other person, aside from Shale Royalty and other lessee defendants, until appellees' lawsuit was filed. Title to the mineral interest was quieted in Damsky (7.65%), Berman (7.65%), and ACC Legacy (15.3%), and the trial court quieted title to an overriding royalty interest in the minerals in Shale Royalty. This appeal followed.

## II. *Standard of Review*

Quiet-title actions have traditionally been reviewed de novo as equity actions. *Phifer v. Ouellette*, 2022 Ark. App. 78, 641 S.W.3d 48. We will not reverse findings of fact unless they are clearly erroneous. *Smith v. Boatman*, 2017 Ark. App. 488, 529 S.W.3d 254. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing a trial court's findings of fact, the appellate courts give due deference to the trial court's superior position and the weight to be accorded the testimony. *Id.*

We review issues of statutory interpretation de novo because it is for an appellate court to determine the meaning of a statute. *Holladay v. Glass*, 2017 Ark. App. 595, 534

7

S.W.3d 173. We are not bound by the trial court's determination on statutory interpretation. *Magness v. Graddy*, 2021 Ark. App. 119, 619 S.W.3d 878. The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.* When the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Id.* We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Piper v. Potlatch Fed. Credit Union*, 2009 Ark. App. 701, 371 S.W.3d 704. We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Id.* We strive to reconcile statutory provisions relating to the same subject to make them consistent, harmonious, and sensible. *Garrett v. Progressive Eldercare Servs. - Saline, Inc.*, 2019 Ark. App. 201, 575 S.W.3d 426.

III. *Discussion*

A.  No Proceedings

The first requirement of section 28-40-104(b) is that no proceeding in circuit court concerning the succession or administration of the estate has occurred. Appellants argue that section 28-40-104(b) is plain and unambiguous and that the first requirement in subdivision (b)(1) is not met here because there have been at least two Arkansas probate proceedings concerning the succession or administration of the Cosden estate. They point to the probate proceeding in Cleburne County in 2011 as well as the Pope County proceeding in 1982.

8

Appellants argue that the statute uses the word "concerning" and does not provide that the probate proceedings "determine" succession or administration of the estate. Appellants contend that we should apply the term "proceeding" broadly to mean any legal action in circuit court regarding succession or administration of the estate. They argue that the proceedings in 1982 and 2011 qualify and prevent subdivision (b)(1) from being satisfied; thus, appellees may not use Cosden's will as evidence of a devise.

While appellants urge us to define the term "proceeding" broadly as any legal action, this interpretation seems both unreasonable and fraught with potential for abuse. *See Epps v. Ouachita Cnty. Med. Ctr.*, 2021 Ark. App. 389, 636 SW.3d 787 (recognizing that we will not engage in statutory interpretations that defy common sense and produce absurd results). Anyone seeking to prevent another from using a will as evidence of a devise could simply file any legal action in the probate court and then subsequently dismiss that action or file an action that is clearly outside the limitations period, thus thwarting a transfer of property because there has been a "proceeding." Accepting this interpretation would not be prudent. We are convinced that the legislature intended proceeding to mean more than the mere filing of any legal action.

The trial court found that neither the Cleburne County filing nor the Pope County filing—both of which culminated in orders entered without administration—addressed succession or administered Cosden's will as contemplated by section 28-40-104(b)(1). *See, e.g.*, Lynn Foster and G.S. Brant Perkins, *Arkansas Probate & Estate Admin.* § 22:3 (Nov. 2021) (restating subdivision (b)(1) as requiring that "[n]o administration of the estate has taken

9

place in circuit court"). Although we are not bound by it, we agree with the trial court's interpretation. This interpretation is sound and reasonable given that, if no administration has occurred, there could be no conflict with later using the will as evidence of a devise. We hold that, under these circumstances, there were no proceedings concerning the administration of Cosden's estate.

In addition, we note that with respect to the Cleburne County action, the order that arose from that petition was later set aside as untimely and thus invalid. In setting aside that order, the probate court in 2020 cited Ark. Code Ann. § 28-40-103(a), which provides that no will shall be admitted to probate and no administration shall be granted unless application is made to the court for admission to probate within five years from the death of the decedent. Because the 2011 petition to probate Cosden's will in Arkansas was filed more than five years after Cosden's death in 1963, the probate court vacated the 2011 order admitting the will to probate and further denied a petition filed in February 2020 seeking to admit Cosden's will to probate. A vacated order is effectively null and void and without legal effect. *McKinney v. Ark. Cardiology, P.A.*, 2009 Ark. App. 741. If a vacated order has no legal effect, it stands to reason that the action that led to its entry would have no legal force and effect.[7] We hold that an action from which an invalid order arose does not qualify as the type of "proceeding" that bars application of the exception, assuming that the second requirement is met.

---

[7]It would seem that the 1982 order admitting Cosden's will to probate in Pope County would likewise be untimely and invalid, although that order has not been vacated.

10

In our de novo review, we hold that, when a filing in the probate court results in an order entered without the administration of an estate and when an action gives rise to an order that has been vacated or otherwise ruled invalid, then, effectively, "[n]o proceeding in circuit court concerning the succession or administration of the estate has occurred." Ark. Code Ann. § 28-40-104(b)(1). This interpretation is both logical and sensible, and it is what we think the legislature must have intended.

### B. Possession by Devisees or No Possession by Anyone

The second requirement of section 28-40-104(b) is that either the devisee or his or her successors and assigns possessed the property devised in accordance with the provisions of the will, or the property devised was not possessed or claimed by anyone by virtue of the decedent's title during the time period for testacy proceedings. In other words, there are two ways to satisfy subdivision (b)(2), and the trial court found that appellees proved both that no one had possessed or claimed the minerals during the time period for testacy proceedings, i.e., from May 6, 1963, to May 6, 1968, and that appellees and their predecessors in title possessed the minerals after the five-year period for testacy proceedings had lapsed in that they had transferred and leased the mineral interests and derived proceeds from the production of some portion of the minerals in Cleburne County.

Appellants argue that appellees cannot simultaneously argue that they both possessed the mineral interests and that no one possessed the mineral interests. Appellants cite *Johnson v. Johnson*, 292 Ark. 536, 732 S.W.2d 121 (1987), in which the decedent was survived by his widow and three children from a prior marriage. His will, which was not probated within

the five-year period following his death, divided his estate, consisting of farmland and certificates of deposit (CDs), into two trusts. The widow was to receive the income from both trusts until her death or until she remarried, in which event the income would terminate, and the corpus would be distributed to the decedent's three children. The CDs were maintained at the decedent's bank where they generated interest paid to the widow with the approval of the decedent's children. The widow eventually remarried, and the children filed a petition alleging that their father had died intestate and that they were entitled to two-thirds of his estate. The widow argued that the will should be admitted pursuant to the exception in section 28-40-104(b) to show that she was entitled to one-half of the decedent's assets. The trial court found that the statutory exception did not apply and that the laws of intestate succession governed. The widow appealed, arguing that she was in possession of the property—the CDs—in that she had received the income. The supreme court disagreed and held that actual, rather than constructive, possession was required and that the bank had had actual possession of the CDs. *Johnson* does not stand for the proposition that the two possibilities of both possession and no possession within subdivision (b)(2) are mutually exclusive, as suggested by appellants, because the supreme court was not called upon to address the second possibility, i.e., no possession, under the facts of that case. *See Atkinson v. Knowles*, 82 Ark. App. 224, 229, 105 S.W.3d 818, 820 (2003) (stating that "[b]ecause [the widow] contended that she was in possession of the property, the supreme court had no reason to address the applicability of the alternative statutory condition, i.e., a situation in which no one claimed or possessed property of a decedent during the five-year term in which

12

to conduct testacy proceedings."). Here, there was no evidence in the record that anyone possessed or claimed the mineral interests in Cleburne County during the five-year period for testacy proceedings immediately following Cosden's death.

Appellants also assert that appellees failed to allege in their pleadings that the mineral interests were not possessed or claimed by anyone and offered no evidence in support of that position at trial. Appellees did, however, allege their entitlement to the minerals under the exception and specifically set forth both possibilities under subdivision (b)(2). Appellees offered proof at trial that the earliest claim to the minerals by Sleeper and Carson came in 1974 through the cross-conveyance and stipulation of interest. Appellees should not have had to prove a negative—that there was no evidence of anyone claiming or possessing the minerals from 1963 to 1968. We note that appellants offered no affirmative showing to rebut the possibility that no one had possessed or claimed the mineral interest during the relevant period.

Because we find no clear error in the trial court's finding that no one possessed or claimed the mineral interest during the five-year period for testacy proceedings, we need not address appellants' arguments that the trial court erred in finding that appellees proved that they or their predecessors possessed the minerals by transferring, leasing, and deriving proceeds from the production of the mineral interest.

### C. Affirming Contravenes Plain Text of Statute

Appellants argue that quieting title in appellees contravenes the plain text of section 28-40-104. Appellants point to subsection (a) of the statute, which provides that "[n]o will

shall be effectual for the purpose of proving title to or the right to the possession of any real or personal property disposed of by the will until it has been admitted to probate." Ark. Code Ann. § 28-40-104(a). They argue that subsection (b), with which this appeal is concerned, is a narrow exception that applies only when two requirements are met. Appellants then point to subsection (c), which provides the following:

> The provisions of subsections (b) and (c) of this section shall be supplemental to existing laws relating to the time limit for probate of wills, and the effect of unprobated wills, and shall not be construed to repeal § 28-40-103 and subsection (a) of this section or any other law not in direct conflict herewith.

Ark. Code Ann. § 28-40-104(c).

Appellants assert that subsection (c) explains the relationship between the rejection of unprobated wills in subsection (a) and the limited exception in subsection (b), and appellants conclude that subsection (a) is superior to subsection (b). Appellants argue that the legislature expressly subordinated the narrow exception in subsection (b) to subsection (a).

In *Smith v. Ward*, 278 Ark. 62, 643 S.W.2d 549 (1982), the supreme court discussed the effect of Act 347 of 1981, which created an exception to the Probate Code's prior "sweeping rejection of unprobated wills." *Id.* at 62, 643 S.W.2d at 550. Moreover, *Smith* expressly rejected the argument that appellants have raised. The supreme court said the following:

> It is argued, primarily, that the Probate Code, quoted earlier, denied any effect to an unprobated will and that Act 347 expressly declared in its second section that it did not repeal that section of the Probate Code. True, but Act 347 did amend the Code,

14

else it had no purpose. Since the appellee's case is within the purview of the amendment, the appellants' argument fails.

278 Ark. at 64, 643 S.W.2d at 550.

Because we hold that the trial court did not err in finding that appellees proved both requirements of section 28-40-104(b), the exception applies, and Cosden's will may be used as evidence of the devise of the mineral interests.

Affirmed.

KLAPPENBACH and BARRETT, JJ., agree.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Megan D. Hargraves* and *Sharnae Y. Diggs*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *Kathy McCarroll*, for appellees.

*Daily & Woods, P.L.L.C.*, by: *C. Michael Daily*, for Caer Energy, LLC, f/k/a Riverbend Oil & Gas VIII, LLC.