Cite as 2026 Ark. App. 346

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

No. CV-24-32

| | |
|---|---|
| CITY OF GURDON, ARKANSAS, EX REL. LARRY THOMERSON, IN HIS OFFICIAL CAPACITY AS MAYOR OF GURDON, ARKANSAS, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PARTIES | Opinion Delivered May 20, 2026 <br><br> APPEAL FROM THE CLARK COUNTY CIRCUIT COURT <br> [NO. 10CV-18-95] |
| APPELLANT | HONORABLE GARY M. ARNOLD, JUDGE |
| V. | |
| AT&T CORP. AND SOUTHWESTERN BELL D/B/A AT&T ARKANSAS | |
| APPELLEES | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**MIKE MURPHY, Judge**

This appeal arises from a class-action lawsuit filed by the city of Gurdon against AT&T Corp. and Southwestern Bell d/b/a AT&T Arkansas (collectively "AT&T"), which alleged that AT&T unlawfully charged Gurdon and other Arkansas cities three fees for the cities' use of AT&T's telephone services. The circuit court granted AT&T's motion for summary judgment and denied Gurdon's motion for class certification as moot. Gurdon

appeals the circuit court's grant of summary judgment in favor of AT&T. We affirm in part and reverse and remand in part.

## I. *Background*

AT&T provided telephone services to the city of Gurdon from 2011 to 2017. As part of providing those services, AT&T assessed a 911 fee, a Special Municipal Charge, and an Arkansas Universal Service Fee. The 911 fee is an emergency telephone service charge that AT&T was required, under the Arkansas Public Safety Communications Act ("APSCA"), to bill and collect from its "service users" and remit to the government. Ark. Code Ann. § 12-10-318(f)(4) (Repl. 2016). The Special Municipal Charge is a charge that AT&T collected from "its customers residing in each municipality" to recover the amount of the franchise fee assessed by the municipality on AT&T for authorization to use the municipal streets and rights-of-way to deploy AT&T's facilities. Ark. Code Ann. § 14-200-101(b)(2) (Supp. 2025). The Arkansas Universal Service Fee is a surcharge collected by AT&T to recover mandatory payments that AT&T made to the Arkansas High Cost Fund ("AHCF"). Ark. Code Ann. § 23-17-404(2)(B) (Repl. 2015). Gurdon filed a class-action lawsuit against AT&T alleging that the imposition of these three fees against the city was unlawful and thereafter filed a motion for class certification.[1]

---

[1]Gurdon's motion defined the proposed class as: "All Arkansas cities which have been charged or have paid Defendant's 911, or Arkansas Universal Service or Special municipal charge fees or related charges from the five years immediately prior to the filing of this lawsuit up through the date of the entry of judgment in this case."

In the operative complaint, filed May 31, 2018, Gurdon requested relief pursuant to Arkansas Code Annotated section 16-111-101, et seq., seeking a declaratory judgment that:

(1) Gurdon and the putative class members are not subject to 911 fees under the provisions of APSCA, Ark. Code Ann. § 12-10-300, et seq;

(2) Gurdon and the putative class members are not subject to the payment of a Special Municipal Charge;

(3) AT&T has no basis to collect from Gurdon and the putative class members an Arkansas Universal Service Fee;

(4) AT&T improperly charged, billed, and collected public funds from Gurdon and from the putative class members;

(5) Such improper and unlawful fees include, but are not limited to, the following:

(a) 911 fees and associated administrative charges collected by AT&T;
(b) "Arkansas Universal Service" charges;
(c) "Special municipal charges"; and
(d) taxes imposed on each of these improper charges;

(6) Gurdon and the putative class members are entitled to a refund of all such fees which were unlawfully exacted from public funds.

On June 21, AT&T answered and asserted that Gurdon's claim challenging the "Arkansas Universal Service Fee" is subject to the primary jurisdiction of the Arkansas Public Service Commission ("PSC"). AT&T further asserted that Gurdon's "claims are barred by the voluntary payment doctrine" and that Gurdon "failed to name as necessary parties those entities for whom the 911 fees at issue were collected and turned over."[2]

---

[2]AT&T Arkansas simultaneously filed a third-party complaint against Clark County, alleging that "the County is or may be liable for part of [Gurdon's] claim against AT&T." According to the third-party complaint, in the event that Gurdon is entitled to the requested declaratory relief and refund relating to the 911 fees, "then AT&T would be entitled to (a)

3

On August 24, AT&T filed a "Motion to Dismiss or Stay Pursuant to the Doctrine of Primary Jurisdiction." The motion stated that, because the PSC has regulatory authority over the AHCF, AT&T had, on July 2, 2018, filed an application for a declaratory ruling by the PSC relating to the "Arkansas Universal Service Fee" surcharge. According to the motion, AT&T specifically "asked the PSC to hold that nothing in the AHCF statute or the PSC's AHCF regulations exempts an intrastate retail telecommunications service customer from AHCF surcharges based on its status as a governmental entity." AT&T contended that because the PSC has primary jurisdiction over claims relating to the AHCF, the circuit court should dismiss or stay that part of Gurdon's lawsuit challenging the "Arkansas Universal Service Fee" pending the outcome of the administrative proceeding in the PSC.

Gurdon, on the other hand, maintained that the city's lawsuit should proceed in the circuit court in whole because circuit courts "are vested with the responsibility of determining declaratory judgments under A.C.A. § 16-111-101." Gurdon further noted that telecommunications providers such as AT&T, unlike other public utilities, are not entirely regulated by the PSC.

The circuit court did not rule on AT&T's motion to dismiss or stay.

On January 16, 2019, AT&T filed a "Notice of Supplemental Authority" informing the circuit court of an order entered by the PSC on October 30, 2018, in connection with

---

monetary relief from the County for the 911 fees collected from [Gurdon] and remitted to the County, and (b) declaratory relief that the County cannot impose 911 fees upon [Gurdon's] telephone services and cannot require AT&T to collect and remit such fees."

4

AT&T's administrative proceeding. According to the order, the PSC found "it to be essential" to exercise its discretionary authority to issue a declaratory order, "as the Universal Services Statute, Ark. Code Ann. §§ 23-17-401 *et seq.* should be interpreted uniformly, this is a case of first impression, and this Commission has the duty to administer and interpret such law." The order includes the following declarations: (1) that Gurdon, in its capacity as an intrastate retail telecommunications service customer, is subject to AHCF surcharges like any other retail customer; and (2) that governmental entities that purchase intrastate retail telecommunications services are not exempt from Ark. Code Ann. § 23-17-404(b)(2)(B) and AHCF Rule 4.04(A).

On August 1, AT&T moved for summary judgment. AT&T argued that because the PSC resolved the issue in a final order that Gurdon did not appeal, "the claim-preclusion facet of res judicata," bars Gurdon from re-litigating its claim of exemption from the "Arkansas Universal Service Fee," and "the doctrine of administrative res judicata" bars Gurdon from attempting to collaterally attack the PSC's decision. Additionally, AT&T argued that it is statutorily authorized, pursuant to Ark. Code Ann. § 14-200-101(b)(2), to impose special municipal charges upon "its customers residing in each municipality" to recover the franchise fees imposed upon AT&T by the municipality and, further, that "nothing in Arkansas law exempts municipalities from this charge when the municipality itself is a customer." Finally, AT&T argued that the APSCA, Ark. Code Ann. § 12-10-318, requires AT&T to bill 911 fees to all "service users" and that Gurdon was a "service user" as defined by the statute.

Among other documents, AT&T submitted the affidavit of Lisa Lake, an AT&T-employed "regulatory liaison in Arkansas." In her affidavit, Ms. Lake stated that Gurdon purchased telephone services from AT&T beginning in 2011 and discontinued its AT&T telephone services in 2017. According to Ms. Lake, "[o]ne landline telephone service that Gurdon obtained from AT&T was local telephone service that included the capability of calling 9-1-1 in the event of an emergency."

Ms. Lake also stated that Gurdon imposes a franchise fee on local telephone service provided by AT&T under a city ordinance. She explained that AT&T "charges customers of its local telephone services, including Gurdon, a special municipal charge to recover franchise fees imposed by Gurdon for authorization to use the municipal streets and rights-of-way to deploy AT&T's facilities."

AT&T also submitted with its summary-judgment motion a copy of Gurdon Ordinance No. 370. Ordinance No. 370, enacted in 1991, memorializes an agreement authorizing the Southwestern Bell Telephone Company (and its successors and assigns) "to operate its telephone system and all business incidental to or connected with the conducting of a telephone business and system in the City of Gurdon" and to use "the public streets, avenues, alleys, and the public grounds and places within the [city] limits" for the telephone company's "plant construction and appurtenances." In exchange, the telephone company agreed to pay to the city an annual franchise payment in "an amount equal to 5 percent of the company's local exchange access line charges collected in the corporate limits of Gurdon for the previous calendar year." Ordinance No. 370, in section 3, states:

6

The annual payment herein returned shall be in lieu of all other licenses, charges, fees or impositions (other than the usual general or special ad valorem taxes) which may be imposed by the City under authority conferred by law. The Telephone Company shall have the privilege of crediting such sums with any unpaid balance due said Company for telephone services rendered or facilities furnished to said City.

In its summary-judgment opposition, Gurdon argued that the city is not a "service user," within the statutory definition, and therefore is not subject to the 911 fees imposed under the APSCA. In support, Gurdon submitted the affidavit of Clark County Assessor Lana Clark attesting that (1) "Clark County exempts various forms of public property from county taxes, including, but not limited to, real and personal property owned by the public schools and government subdivisions located within the County"; and (2) "Real and personal property owned by the City of Gurdon is not taxed by the County."

Relating to the "Special Municipal Charge," Gurdon argued that "AT&T has admitted that it owes Gurdon a fee for the use of Gurdon's public rights-of-ways[,]" that "AT&T is obligated to pay this amount to Gurdon[,]" and that "AT&T has improperly exacted public funds from Gurdon and the putative class members which AT&T has used to pay for franchise fees and the use of public rights-of-ways." In support, Gurdon submitted the affidavit of Mayor of Gurdon Sherry Kelley, attesting that the city of Gurdon "has never appropriated public funds to be used for AT&T purposes" and "never agreed to reduce the amount of the franchise fee which AT&T is obligated to pay Gurdon."

As to the "Arkansas Universal Service Fee," Gurdon asserted that "AT&T receives around $5 million a year from the AHCF" and argued that it "is improper for AT&T to exact public money from Gurdon and putative class members to pay into a fund which is

7

later used to provide money which AT&T can use for private purposes." Gurdon further maintained that "AT&T has failed to demonstrate any basis which would support the application of the doctrine of *res judicata*." Gurdon argued that there "is simply no legal authority for allowing a defendant in a pending circuit court action to unilaterally file a counterclaim in an administrative agency[,]" noting that the city filed an action against AT&T in the circuit court and had never asked any other court to rule on its claims. Further, according to Gurdon, the PSC did not address, and lacks jurisdiction to address, the issue before the circuit court: "*whether AT&T should be collecting the fee from public funds*."

Among other supporting documents, Gurdon submitted the deposition testimony of Lisa Lake. Regarding whether the city is a "service user" under the APSCA, Ms. Lake said that AT&T is a supplier for the 911 service and collects the 911 fee; "any phone lines that we provide the ability to call 911 to, those customers would be considered service users."

Relating to the "Arkansas Universal Service Fee," Ms. Lake said that AT&T's seeking an administrative ruling from the PSC mid-litigation was essentially "a counterclaim to prove that the funds that we were collecting on customer bills as the universal service fee to recoup what we pay to the high cost fund were legitimate charges and applicable to all of our customers." According to Ms. Lake's testimony, the administrator of the AHCF determines, based on reported intrastate revenues, the amount that each telephone company owes to the AHCF. AT&T collects its AHCF payments back from its customers through a per-access-line

charge that is periodically recalculated by AT&T's finance department.[3] Ms. Lake explained that all telecommunications service providers (including AT&T Long Distance and AT&T's cellular company) are required to pay into the AHCF and are permitted to recoup such payment from their customers. However, only "local ILECs, the incumbent local exchange carriers" such as AT&T Arkansas, can receive funding from the AHCF. Ms. Lake testified that "AT&T has committed to use its high cost fund money for broadband expansion." She elaborated: "Technically, we don't have to do anything with the money because it's to recoup our cost of providing service. So what we have to do with it is make sure that we serve all of our customers, that we provide universal service to all of our customers." The "AR Universal Service Fee" charge on the bill "is AT&T recouping that payment back from its customers[.]"

On November 20, the circuit court entered an order denying AT&T's motion for summary judgment.

In the meantime, a similar class-action lawsuit brought by Clark County against AT&T proceeded to a bench trial in the circuit court.[4]

In a final order, entered November 8, 2023, the circuit court noted that the trial held in connection with the Clark County lawsuit had given the court "an opportunity for further consideration of the legal basis of the claims and defenses in this action." Upon reconsideration of its prior ruling, the circuit court concluded in the order "that there is no

---

[3]This charge is labeled "AR Universal Service Fee" on AT&T customers' monthly bills.

[4]Clark County's action against AT&T led to the appeal in the companion case in No. CV-24-54, also handed down today.

9

dispute of material fact and that AT&T is entitled to judgment as a matter of law." Accordingly, the circuit court granted AT&T's motion for summary judgment and denied Gurdon's pending motion for class certification as moot.

The circuit court concluded that Gurdon falls within the statutory definition of a "service user" and is therefore subject to the 911 fees imposed under the APSCA as a matter of law. In reaching this conclusion, the court found that Gurdon received landline telephone services capable of 911 calls and further found that "Gurdon, like any other Arkansas municipality," is "not exempt from county or municipal taxes or utility franchise assessments."

Additionally, the circuit court concluded that Gurdon's challenge to the "Special Municipal Charge" fails as a matter of law. The court found that such fees are permitted by Arkansas law and further found that nothing exempted Gurdon from this fee, and the city is not entitled to reimbursement. The court rejected Gurdon's arguments based on the Arkansas Constitution and the public-purpose doctrine. In so doing, the court found that "AT&T is the party that is being taxed, and the special municipal fee is merely a statutorily authorized pass through charge to customers." As the court noted, "AT&T is required by law to pay municipal franchise fees" and is permitted "to recover that cost of doing business from its customers (just as any business would do)." The court found that "Gurdon may not have specifically appropriated funds to pay franchise fees or to make AHCF contributions, but it did have full authority and appropriations to pay its telephone bills (which is why it is seeking refunds)." "By paying its bills, including the special municipal fee," the court

10

concluded, "Gurdon was not giving 'financial aid' to AT&T—it was merely paying its bills, in an amount sufficient for AT&T to recover its costs of providing telephone services." The court noted that "[n]othing in the Arkansas constitution prohibits [cities] from paying for the services they receive."

The circuit court concluded that Gurdon's challenge to the "Arkansas Universal Service Fee" also fails as a matter of law. The court found that nothing in the AHCF statute or in the PSC's AHCF regulations exempted Gurdon, or any other municipality customer, from this surcharge. Additionally, the court found that "the PSC has already squarely decided this dispute," and the doctrine of res judicata applies to the PSC's decision. The court rejected Gurdon's constitutional and public-purpose-doctrine arguments for similar reasons as the special municipal charges. The court also found that these arguments "constitute an improper collateral attack on the Arkansas PSC's final order, as Gurdon could have and should have raised the same arguments before the PSC, and/or on appeal of the PSC's decision."

Finally, the circuit court concluded that to the extent Gurdon argues that the statutory provisions authorizing the special municipal charges and the universal service fees "are unconstitutional or violate the public-purpose doctrine as applied to telephone customers who are [municipalities], it was required to give notice to the Attorney General." The court found that, absent such notice, Gurdon's arguments are "procedurally improper."

Gurdon now appeals the grant of summary judgment, raising five points for reversal: (1) The circuit court erred by ruling that the APSCA allowed AT&T to collect 911 fees from

11

a political subdivision; (2) The circuit court erred by ruling that AT&T could collect "Special Municipal Charges" from Gurdon to pay the franchise fee that AT&T owed Gurdon; (3) The circuit court erred by ruling that Gurdon was required to pay AT&T's "Arkansas Universal Service Fee" charges; (4) The circuit court erred by ruling that Gurdon's challenge to the "Arkansas Universal Service Fee" was barred by res judicata; and (5) The circuit court erred in concluding that Gurdon was required to provide notice to the Attorney General.

## II. *Standard of Review*

Summary judgment should be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Washington County v. Bd. of Trustees of the University of Arkansas*, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175. Once the moving party has demonstrated an entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, at 8, 400 S.W.3d 701, 707. On review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.* at 8–9, 400 S.W.3d at 707.

As to issues of law presented, our review is de novo, meaning the entire case is open for review. *Bd. of Trs. of the Univ. of Ark.*, 2016 Ark. 34, at 3, 480 S.W.3d at 175. The question

of the correct application and interpretation of an Arkansas statute is a question of law, which we decide de novo. *Cent. Okla. Pipeline, Inc.*, 2012 Ark. 157, at 9, 400 S.W.3d at 707. We also review the circuit court's interpretation of the constitution de novo. *Id.* When the question involves applying the legal doctrine of res judicata, we simply determine whether the appellee was entitled to judgment as a matter of law. *Luckett v. Ark. Parole Bd.*, 2024 Ark. 139, at 2, 697 S.W.3d 518, 520; *Duggar v. City of Springdale*, 2020 Ark. App. 220, at 7, 599 S.W.3d 672, 680.

III. *Discussion*

A. 911 fees

In its first point, Gurdon argues that the circuit court erred in upholding the imposition of the 911 fees, which, as previously mentioned, arise under the APSCA. We agree.

This issue turns on statutory interpretation, which we review de novo. *Cent. Okla. Pipeline, Inc.*, 2012 Ark. 157, at 9, 400 S.W.3d at 707. The basic rule of statutory construction is to give effect to the legislative intent underlying the statute. *Sw. Bell Telephone Co. v. Ark. Public Serv. Comm'n*, 69 Ark. App. 323, 329, 13 S.W.3d 197, 200 (2000). When the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Helena-W. Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 580, 268 S.W.3d 879, 884 (2007). In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.

13

*Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and give meaning and effect to every word in the statute, if possible. *Id.*

A statute is ambiguous if it is open to more than one construction. *Id.* When the statute is ambiguous, an appellate court is permitted to look at the language of the statute, its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters. *Sw. Bell Telephone Co.*, 69 Ark. App. at 329, 13 S.W.3d at 201. As a guide in ascertaining the legislature's intent, we examine the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretations, and all other matters of common knowledge within the court's jurisdiction. *Id.* In determining legislative intent, we must look at the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. *Id.* at 333, 13 S.W.3d at 203. We do not, however, engage in statutory interpretations that defy common sense and produce absurd results. *McDaniel v. Ark. Public Serv. Comm'n*, 2014 Ark. App. 529, at 9, 444 S.W.3d 380, 385.

The APSCA was enacted in furtherance of "the public interest to shorten the time and simplify the method required for a citizen to request and receive emergency aid." Ark. Code Ann. § 12-10-302(a) (Repl. 2016). The statute lists the legislative purposes behind the Act:

> (1) Establish the National Emergency Number 911 (nine, one, one) as the primary emergency telephone number for use in participating political subdivisions of the State of Arkansas;

(2) Authorize each chief executive to direct establishment and operation of 911 public safety communications centers in their political subdivisions and to designate the location of a 911 public safety communications center and agency which is to operate the center. . . .;

(3) Encourage the political subdivisions to implement 911 public safety communications centers; and

(4) Provide a method of funding for the political subdivisions which will allow them to implement, operate, and maintain a 911 public safety communications center.

Ark. Code Ann. § 12-10-302(e) (Repl. 2016).

In line with these stated purposes, the APSCA authorizes and encourages the "chief executive of each political subdivision" to create a 911 public safety communications center.[5] *See* Ark. Code Ann. § 12-10-304 (Repl. 2016). The statute, in this vein, provides: "When so authorized by a majority of the persons voting within the political subdivision in accordance with the law, the governing authority of each political subdivision may levy an emergency telephone service charge in the amount assessed by the political subdivision on a per-access-line basis as of January 1, 1997, or the amount up to five percent (5%) of the tariff rate[.]" Ark. Code Ann. § 12-10-318(a)(1)(A) (Repl. 2016). "Upon its own initiative, the governing authority of the political subdivision may call such a special election to be held in accordance with § 7-11-201 et seq."[6] Ark. Code Ann. § 12-10-318(a)(2) (Repl. 2016).

---

[5]The "chief executive" of a political subdivision means "the Governor, county judges, mayors, city managers, or city administrators of incorporated places, and is synonymous with head of government, dependent on the level and form of government." Ark. Code Ann. § 12-10-303(5) (Repl. 2016).

[6]The "governing authority" of a political subdivision means "county quorum courts and governing bodies of municipalities." Ark. Code Ann. § 12-10-303(12) (Repl. 2016).

The Act provides that the "emergency telephone service charge . . . shall be added to and may be stated separately in the billing by the service supplier to the service user." Ark. Code Ann. § 12-10-318(f)(4) (Repl. 2016); *see also* Ark. Code Ann. § 12-10-320(a) (repealed 2019) (providing that "[t]he duty of the service supplier to collect any service charge shall commence upon the date of its implementation, which date shall be specified in the resolution calling the election"). "Every billed service user shall be liable for any service charge imposed under this subsection until it has been paid to the service supplier." Ark. Code Ann. § 12-10-318(f)(5) (Repl. 2016). The statute authorizes "the political subdivision" to "pursue against a delinquent service user any remedy available at law or in equity for the collection of a debt." Ark. Code Ann. § 12-10-318(g) (Repl. 2016).

The APSCA, as it existed at times relevant to this case, required that the service charges collected by the service supplier be remitted to "the political subdivision" on a quarterly basis. Ark. Code Ann. § 12-10-320(c)(1) (repealed 2019). Additionally, "[t]he service supplier shall be entitled to retain as an administrative fee an amount equal to one percent (1%) from the gross receipts to be remitted to the political subdivision." Ark. Code Ann. § 12-10-320(c)(3) (repealed 2019).

The term "service user," as defined in the Act, means "any person, company, corporation, business, association, or party not exempt from county or municipal taxes or utility franchise assessments who is provided landline telephone service, CMRS service, voice over internet protocol service, or any nontraditional phone service with the capability of placing a 911 call in the political subdivision." Ark. Code Ann. § 12-10-303(26) (Repl. 2016).

16

The list of entities identified as "service user" does not include a "political subdivision." Despite this omission, the circuit court concluded that a political subdivision, and specifically a municipality such as Gurdon, is a "service user" subject to emergency telephone service charges, or 911 fees. We disagree with this conclusion.

The APSCA demonstrates that the General Assembly knows how to expressly include governmental entities when it intends to do so. For example, the Act, as noted above, refers repeatedly to a "political subdivision" both within, and beyond, the definitional section. Despite these repeated and deliberate references, the legislature did not include "political subdivision" in the definition of "service user." This contrast is significant. Where the legislature includes a term in one part of a statute but omits it in another, we should not expand those categories or add omitted entities. *MacSteel Div. of Quanex v. Ark. Okla. Gas. Corp.*, 363 Ark. 22, 31, 210 S.W.3d 878, 883–84 (2005). Here, the repeated used of "political subdivision" throughout the Act—paired with the absence from the "service user" definition—confirms that political subdivisions are not "service users" within the meaning of the statute.

Further, the plain statutory language demonstrates the legislature's intent to exclude *some* party from the definition of "service user" to be charged the 911 fee. The APSCA expressly excludes from the definition of "service user" any "party exempt from county or municipal taxes or utility franchise assessments." Cities and towns are, under the Arkansas Constitution, local subdivisions of the state government and exist only for public purposes. As such, property held by a municipality in connection with its governmental functions is

17

within the tax exemption clause of article 16, § 5(b) exempting public property used exclusively for public purposes. *City of Hope v. Dodson*, 166 Ark. 236, 266 S.W. 68, 69 (1924) (holding that utility owned and operated by municipality was constitutionally exempt from taxation). We do not agree that simply because a government-entity purchaser might be affected at the point of sale in a taxable transaction, cities such as Gurdon are "not exempt from county or municipal taxes" as contemplated by the APSCA. *Any* purchaser might be affected by sales-tax ramifications at the point of sale. Local sales and use taxes, moreover, are subject to numerous exemptions and rebates, including rebates for certain purchases by "a state or county, city, municipality, school district, state-supported college or university, or any other political subdivision of the state[.]" Ark. Code Ann. § 26-52-523; *see also* Ark. Code Ann. § 26-53-112(1) (exempting from taxation any property, "the use . . . of which this state is prohibited from taxing under the United States Constitution or laws or the Arkansas Constitution or law").

The 911 fee at issue here, moreover, is imposed by the political subdivision that operates a 911 public safety communications center. One of the main purposes of the APSCA is to provide funding to political subdivisions to carry out such operations. The Act achieves this purpose, in part, by authorizing "governing bodies of municipalities," as the governing authority of the political subdivision, to levy a 911 fee on local telephone lines to be collected by the telephone-service supplier and remitted to the city. It makes little sense for a city to levy a charge to be imposed on the city's phone lines to fund the city's operations.

18

For these reasons, we reverse the circuit court's grant of summary judgment relating to the 911 fee, and we remand the case to the circuit court for further proceedings to consider the issue of whether Gurdon is entitled to recover the fees.

## B. Special Municipal Charge

In its second point, Gurdon argues that the circuit court erred in upholding the imposition of the "Special Municipal Charge." We agree.

Municipalities such as Gurdon have the right to establish terms and conditions upon which public utilities such as AT&T may be permitted to operate within the borders of said municipalities and may by ordinance impose a reasonable franchise fee for service rendered by any public utility occupying streets and rights-of-way within the municipality. Ark. Code Ann. § 14-200-101(b)(1). "In common parlance, such franchise fees are, in form, rental payments for a public utility's use of the municipality's right-of-way[.]" *City of Little Rock v. AT&T Communications of the Sw., Inc.*, 318 Ark. 616, 620, 888 S.W.2d 290, 292 (1994).

Conversely, AT&T is permitted by law "to collect from its customers residing in each municipality an amount that equals the franchise fee assessed by the municipality on the public utility." Ark. Code Ann. § 14-200-101(b)(2). But "[n]*othing in this act shall deprive or be construed as depriving any municipality of the benefits or rights accrued or accruing to it under any franchise or contract to which it may be a party, and neither the commission nor any court exercising jurisdiction under this act shall deprive the municipality of any such benefit or right*." Ark. Code Ann. § 14-200-101(e) (emphasis added).

19

Simply put, allowing AT&T to turn around and collect or recover from Gurdon a portion of what it pays under the franchise-fee agreement is "depriving [Gurdon] of the benefits or rights accrued or accruing to it under [the agreement][.]" In essence, AT&T was collecting money from Gurdon to pay back money that it owed to Gurdon. Gurdon never agreed to discount the amount that AT&T owed it for the use of city rights-of-way. AT&T admits that the money it collected from this charge was actually used to pay Gurdon for the franchise fee that it already owed to the city. Consequently, by using money from Gurdon to pay Gurdon, AT&T failed to pay the proper amount of the franchise fees it owed Gurdon in the first place.

Contrary to the circuit court's conclusion, the fact that the city of Gurdon may be an AT&T "customer" does not, by itself, render the city subject to the "Special Municipal Charge." To do so would dilute Gurdon's "benefits or rights" under their franchise agreement and is specifically prohibited under the plain language of the statute. Accordingly, we reverse the grant of summary judgment as to the "Special Municipal Charge," and remand to the circuit court for further proceedings to consider Gurdon's claim for refund of the fees.

C. Arkansas Universal Service Fee

In its third point, Gurdon argues that the circuit court erred in upholding the imposition of the "Arkansas Universal Service Fee." We disagree and affirm the circuit court's grant of summary judgment relating to this fee.

The Arkansas High Cost Fund ("AHCF") was established "to promote and assure the availability of universal service at rates that are reasonable and affordable and to provide for

20

reasonably comparable services and rates between rural and urban areas." Ark. Code Ann. § 23-17-404(a)(1). The AHCF accomplishes this purpose by providing funding to eligible telecommunications carriers serving rural or high-cost areas of the state. Ark. Code Ann. § 23-17-404(a)(2)–(3). Every telecommunications provider in the state is required to pay an amount into the AHCF that is proportionate to its intrastate retail service revenues. Ark. Code Ann. § 23-17-404(b)(1), (2)(A)(i). The AHCF statute provides: "Because customers of the telecommunications providers that would pay the AHCF charge receive the benefits of a universal network, the telecommunications providers may surcharge their customers to recover the AHCF charges paid by the telecommunications provider. Therefore, the AHCF charge is not a tax and is not affected by state laws governing taxation." Ark. Code Ann. § 23-17-404(b)(2)(B); *see also* Ark. Admin. Code 126.03.10-4.04, AHCF Rule 4.04(A) ("A telecommunications provider may recover the amount of its contribution to the AHCF from its interstate retail telecommunications service customers."). The term "customer" is defined in the AHCF Rules as "any person, firm, partnership, cooperative corporation, corporation or lawful entity that has ordered and is receiving retail telecommunications services supplied by any telecommunications provider and is receiving a bill from the provider for services associated with one or more retail access lines." Ark. Admin. Code 126.03.10, AHCF Rule 10.

AT&T chooses to collect the money it pays to the AHCF back from its customers, including Gurdon, by adding an "AR Universal Service Fee" to its customers' monthly bills. Gurdon contends that while AT&T "may (*but is not required to*) charge customers to recover

21

the amount that it paid into the fund," it should not collect money from Gurdon and other public entities to help pay its AHCF obligations. We agree with the circuit court's conclusion that the AHCF charges that AT&T, like all intrastate retail telecommunications service providers, must pay are a required cost of doing business in Arkansas. A surcharge, such as AT&T's "AR Universal Service Fee," merely recovers some of the cost necessary to provide telecommunications services to customers. Accordingly, we agree that the "Arkansas Universal Service Fee" is properly passed through and billed to customers receiving AT&T service, including Gurdon.

Contrary to Gurdon's argument, the AHCF is not geared toward the private interests of AT&T. The AHCF serves an important public interest in promoting the availability of universal service at affordable costs. The AHCF does this not only by providing funding for telecommunications providers like AT&T, but also by providing additional funding for other things, including 911 public safety communications centers. Additionally, AHCF funds are not distributed for just any purpose, whether public or private. Rather, only eligible carriers providing certain universal service are entitled to distributions from the AHCF. For these reasons, we affirm the circuit court's grant of summary judgment upholding the imposition of the "Arkansas Universal Service Fee."

## D. Res Judicata

In its fourth point, Gurdon challenges a separate ruling by the circuit court concluding that Gurdon's claims relating to the "Arkansas Universal Service Fee" are barred by the doctrine of res judicata. Because we affirm the circuit court's separate ruling on the

merits upholding the imposition of the "Arkansas Universal Service Fee," we need not discuss whether these claims are also barred by res judicata. *See Cent. Okla. Pipeline, Inc.*, 2012 Ark. 157, at 19, 400 S.W.3d at 712–13.

## E. Notice to the Attorney General

In its final point, Gurdon argues that the circuit court erred in concluding that it was required to provide notice to the Attorney General. We agree.

Arkansas law provides that when declaratory relief is sought, if the statute is alleged to be unconstitutional, "the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard." Ark. Code Ann. § 16-111-111(a). The purpose of the notice statute is to prevent a statute from being declared unconstitutional without a full adjudication and adversarial parties. *Sherland v. Sherland*, 2015 Ark. App. 342, at 5, 465 S.W.3d 3, 7.

Gurdon did not ask the circuit court to declare any statute unconstitutional. Gurdon merely challenged AT&T's imposition of discretionary charges on grounds that it would violate the public-purpose doctrine for the city to use public funds to help AT&T pay franchise fees or to reimburse AT&T for money that AT&T owed to the AHCF. Notice to the Attorney General was not required in these circumstances. We therefore reverse the circuit court's ruling on this issue.

Affirmed in part; reversed and remanded in part.

TUCKER, THYER, WOOD, and BROWN, JJ., agree.

BARRETT, J., dissents.

23

STEPHANIE POTTER BARRETT, Judge, dissenting. I respectfully dissent from the majority's decision to reverse the circuit court on the issue of the 911 fees. I would affirm the circuit court's well-reasoned conclusion that Gurdon falls within the statutory definition of a "service user" and is therefore subject to the fee imposed under the Arkansas Public Safety Communications Act ("APSCA").

This appeal presents an issue of statutory interpretation, which we review de novo. *See Harts v. Damsky*, 2024 Ark. App. 604, 704 S.W.3d 638. Even so, our review is guided by the plain language of the statute, and where the circuit court correctly interprets and applies that language, affirmance is required. *Id.* Here, the circuit court carefully analyzed the statutory framework and concluded that Gurdon received landline telephone services capable of placing 911 calls and therefore satisfied the definition of a "service user" under Arkansas Code Annotated section 12-10-303(27). The circuit court further found that no express statutory exemption applies to municipalities such as Gurdon. I agree.

The APSCA expressly provides that the 911 service charge "shall have uniform application and shall be imposed throughout the political subdivision to the *greatest extent possible* in conformity with availability of the service in any area of the political subdivision." Ark. Code Ann. § 12-10-318(e) (emphasis added). The circuit court correctly recognized that this language reflects the legislature's intent that participation in the funding structure be broad and uniform, not selectively limited. Construing the statute to exempt municipalities would conflict with the legislature's directive that the charge be imposed "throughout" the political subdivision "to the greatest extent possible."

24

The circuit court also correctly relied on the settled principle that tax-exemption provisions must be strictly construed against the exemption, with any doubts resolved in favor of taxation. *See Miller Cnty. v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998) (citing *Pledger v. Noritsu Am. Corp.*, 320 Ark. 371, 896 S.W.2d 595 (1995)). The APSCA contains no explicit exemption for counties or municipalities. Thus, as the circuit court concluded, Gurdon's position necessarily depends on implying an exemption that the legislature did not provide. Our rules of statutory construction do not permit such a result. For these reasons, I must dissent.

*Turner & Turner, P.A.*, by: *Todd Turner* and *Dan Turner*, for appellant.

*Smith Williams LLP*, by: *Richard Smith*; *Mayer Brown, LLP*, by: *Kevin Ranlett*, *pro hac vice*; and *Heather B. New*, *pro hac vice*, for appellees.